UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISON

EMMERICH NEWSPAPERS,                                    PLAINTIFF
INCORPORATED

VS.                              CIVIL ACTION NO. 3:23cv26-TSL-MTP

PARTICLE MEDIA, INC.                                   DEFENDANT
D/B/A NEWSBREAK

CONSOLIDATED WITH

EMMERICH NEWSPAPERS, INCORPORATED                      PLAINTIFF

VS.                          CIVIL ACTION NO.: 3:23-cv-391-TSL-RPM


PARTICLE MEDIA, INC.
D/B/A NEWSBREAK                                         DEFENDANT


MEMORANDUM OPINION AND ORDER

Plaintiff Emmerich Newspapers, Inc. (Emmerich) has brought
this action alleging violations by defendant Particle Media,
Inc. d/b/a Newsbreak (Particle) of the Copyright Act, 17 U.S.C.
§ 101, et seq., and the Digital Millennium Copyright Act, 17
U.S.C. § 1201, et seq. (DMCA).[1]  Emmerich has separately moved

---

[1]   This is a consolidated action.  The operative complaint in
Civil Action No. 3:23-cv-26TSL-MTP was filed on April 15, 2023.
Emmerich filed a second action, 3:23-cv-391TSL-MTP, on June 20,
2023, which is identical to the complaint in the original action
except that it purports to "include[] another 11,818 articles"
which are alleged to have been infringed.  The cases were
consolidated by order entered July 13, 2023.  References herein
to "the complaint" are to both complaints.

for summary judgment as to liability [Dkt. 48] and calculation of damages [Dkt. 43] on its DMCA claim, and has moved for summary judgment on its claim for copyright infringement [Dkt. 45].  Particle has responded in opposition to the motions and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that each of the motions should be denied.

<u>Overview of Alleged Facts</u>

According to the complaint, Emmerich owns and publishes many local newspapers in Mississippi, Louisiana and Arkansas. Its news stories are original works of authorship subject to copyright protection.  Plaintiff publishes its newspapers in both print form and on corresponding websites.  Each article published on one of its websites is identified by a unique digital filename known as a "uniform resource locator," or "URL," which identifies the Emmerich newspaper where it was published.  Certain of Emmerich's websites operate behind paywalls, meaning content is only available to paying subscribers who have obtained a password.

Particle is a company that developed and owns a free website and application called "NewsBreak" which provides users with access to local news stories precisely tailored to the user's preferences.  To accomplish this, NewsBreak uses a "web crawler" which systematically searches the internet for news

2

content, then scans the pertinent websites, analyzes them for their content, copies the content verbatim and saves it on its website.  Once NewsBreak has identified a user's location and preferences, it pushes alerts to the user; and if the user clicks on the alert, he is directed to the NewsBreak newsfeed which contains limited portions or "snippets" of the news articles retrieved by the web crawler.  These snippets also include photographic images "scraped" from the website with no reduction in quality, size or resolution.

The complaint alleges that "[f]or a number of years, including but not limited to the years 2018 through 2021," at certain times, when a reader clicked on one of these snippets, he was led to a facsimile of an Emmerich story "self-hosted" on the NewsBreak app or website, which was accompanied by Newsbreak's and not Emmerich's ads.  These self-hosted articles also displayed Emmerich's photographs, which had not been reduced in size, clarity or resolution.  At other times, when a reader clicked on a snippet, he was directed what appeared to be Emmerich's website when in fact, "Particle had actually fetched and copied an exact replica of the [Emmerich] article on its own website where it included its own ads as well" as Emmerich's.[2]

---

[2]     Particle, like Emmerich, makes its money through ads.

Emmerich refers to this "Emmerich-Framed Website Views."
Emmerich alleges that the app never functioned as a web browser.

Emmerich alleges that from 2018 through 2021, Particle republished 33,734 stolen Emmerich articles, of which 17,665 articles were self-hosted and the remainder appeared as Emmerich-framed.  None of the articles were republished with Emmerich's filenames, which, the complaint alleges, were Emmerich's URLs; instead, the URLs/filenames were replaced with Particle's URLs/filenams.  As required by 17 U.S.C. § 411(a)[3], prior to filing Civil Action 3:23-cv-26-TSL-MTP, Emmerich sought and obtained copyright registrations for 6,211 of the stolen articles and prior to filing 3:23-cv-391-TSL-MTP, Emmerich obtained copyright registrations for 11,818 stolen articles.  Plaintiff seeks statutory damages for the DMCA claims under 17 U.S.C. § 1203(c) and actual damages as to its infringement claims under 17 U.S.C. § 504(b).

Particle's Version

According to Particle, its NewsBreak website and app are designed to provide users with a personalized feed of content and information.  In some instances, NewsBreak partners with publishers to provide them tools to manage their content and

---

[3]    This section provides in pertinent part, "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

connect with users.  NewsBreak indexes and links original and
third-party content to make it easier for users to access
content.  To create the newsfeed and for other purposes,
Particle uses a web crawler system, which is described in the
affidavit of Xiliang "Randy" Zhong, a NewsBreak engineer.  Zhong
states that the web crawler

> crawls the websites of both partner and nonpartner
> publishers in the same manner, using RSS feeds or
> scraping (i.e., fetching) web pages.  The system's
> parser then (1) reviews the content related to a
> particular article in order to understand the content
> and filter any content that is illegal, explicit, or
> does not otherwise fit the criteria of the industry's
> content policies; and (2) extracts and saves the URL,
> headline, image, and content of the article.

Per Zhong's affidavit:

> During the relevant period, users who opened NewsBreak
> saw a news feed that, for each listed story, presented
> a headline and/or a thumbnail image and/or the first
> limited words of the article, all intended to promote
> the story.  When an app user clicked on an item listed
> on the news feed, she either (1) viewed the full
> article on NewsBreak, in the case of (a) original
> content generated by NewsBreak or (b) fully-hosted
> articles of publishers and creators with whom Particle
> Media has agreements, or (2) was taken to the
> publisher's website (i.e., the source of the article),
> with NewsBreak acting as a web browser.  When a
> website user clicked on an item listed on the news
> feed, she was given a link to "Go to Publisher's
> website."
>
> When a NewsBreak user clicked to "Share" an
> article, the link created presented a phone user with
> the option to go to the non-partner publisher's
> website either via the NewsBreak app, with the app
> acting as a web browser, or via another web browser
> like Safari.  The link presented a computer user with
> a link to "Go to Publisher's website," which took that

person directly to the non-partner publisher's
website.  Particle Media did not conceal the
publisher's identity.  To the contrary, the NewsBreak
share options directed users to the publisher's
website.

Particle maintains that when its software was functioning
as it intended, information about articles from Emmerich's non-
partner websites only appeared in the NewsBreak feed as a
headline and/or thumbnail image and/or the beginning words of
the article, i.e., as a snippet, accompanied by a link to take
the user to an Emmerich website.  There were, however, two
periods when, due to software glitches, some articles from
Emmerich's websites were inadvertently available in a full-text
version to users of the NewsBreak app on Android phone devices
(which is what Emmerich refers to as "self-hosted").  These
displays were in contravention of Particle's policy prohibiting
showing self-hosted full-text articles from non-partner
publishers.  Zhong's affidavit recites:

The technical glitch first occurred when engineers
unfamiliar with Particle Media's policy and copyright
law were trying to address a functionality issue
related to non-mobile-friendly content and made full
content available by mistake.  Upon learning of the
glitch, Particle Media took immediate actions to stop
it and emphasized the policy not to self-host full-
text content from non-partner publishers.  The glitch
occurred again when a different engineer tried to
resolve a bug and accidentally removed one of the
logics implemented to stop the glitch.  Upon
discovering the error, Particle Media worked quickly
to put the logic back in place.

6

Although Emmerich became aware of Particle's use of its "self-hosted" content as early as February 2020, it did not take steps to immediately inform Particle. Rather, Particle first learned that it had displayed some of Emmerich's full-text articles in January 2021, when Emmerich filed a lawsuit alleging only copyright infringement. See Emmerich Newspapers, Inc. v. Particle Media, Inc., 3:21CV32KHJ-MTP.[4]

SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Lindsey v. Sears Roebuck & Co., 16 F.3d 616, 618 (5th Cir. 1994) (citing Celotex

---

[4]   Nine articles were at issue in that action. Judge Johnson concluded that NewsBreak's full-text reproduction of the articles constituted infringement which was not protected by the fair use affirmative defense set out in 17 U.S.C. § 107. On this basis, she granted plaintiff's motion for summary judgment which claimed that they were not and denied defendant's motion which claimed that they were. Emmerich Newspapers, Inc. v. Particle Media, Inc., No. 3:21-cv-32-KHJ-MTP, 2022 WL 3222892, at *5 (S.D. Miss. Aug. 9, 2022). Judge Johnson denied the parties' cross motions for summary judgment as to whether use of the "snippets" constituted fair use. Id. The parties ultimately settled and the case was dismissed.

Corp. v. Catrett, 477 U.S. 317, 333, 106 S. Ct. 2548, 2558, 91
L. Ed. 2d 265 (1986)).

A genuine issue exists "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.
2505, 2510, 91 L. Ed. 2d 202 (1986).  Conversely, "[n]o genuine
dispute of fact exists if the record taken as a whole could not
lead a rational trier of fact to find for the non-moving party."
EEOC v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014).  When
evaluating whether a genuine dispute as to any material fact
exists, the court considers "all of the evidence in the record
but refrain[s] from making credibility determinations or
weighing the evidence."  Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008). In
so doing, the court must draw all reasonable inferences in favor
of the nonmoving party.  Anderson, 477 U.S. at 255, 106 S. Ct.
2505.  The court observes that even when the Rule 56 standard is
satisfied, it has the discretion to deny the motion.  See Kunin
v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995) (quoting Anderson,
477 U.S. 242, 255-56 (1986)).

DIGITIAL MILLENIUM COPYRIGHT ACT: LIABILITY

The DMCA, which was enacted in 1988, "'backed with legal
sanctions the efforts of copyright owners to protect their works
from piracy behind digital walls such as encryption codes or

password protections.'"  Energy Intel. Grp., Inc. v. Kayne
Anderson Cap. Advisors, L.P., 948 F.3d 261, 276 (5th Cir. 2020)
(quoting Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 458, 127
S. Ct. 1746, 167 L. Ed. 2d 737 (2007)).  "In short, the DMCA was
enacted primarily to address long-standing concerns about
technological circumvention of copyright protection."  Id.  The
DMCA's anti-circumvention provision, § 1201, states, "No person
shall circumvent a technological measure that effectively
controls access to a work protected under this title."  17
U.S.C. § 1201(a)(1)(A).  "To 'circumvent a technological
measure' means to 'descramble a scrambled work, to decrypt an
encrypted work, or otherwise to avoid, bypass, remove,
deactivate, or impair a technological measure, without the
authority of the copyright owner.'"  MGE UPS Sys., Inc. v. GE
Consumer and Indus., Inc., 622 F.3d 361, 365-66 (5th Cir. 2010)
(quoting § 1201(a)(3)(A)).  "'Effectively controls access to a
work' means that 'the measure, in the ordinary course of its
operation, requires the application of information, or a process
or a treatment, with the authority of the copyright owner, to
gain access to the work.'"  Id. (quoting § 1201(a)(3)(B)).
Section 1202(b) "protects the 'integrity of copyright management
information' by prohibiting any person from intentionally
removing or altering CMI if he or she knows or has reasonable
grounds to know it would 'induce, enable, facilitate, or

conceal" copyright infringement.'"   <u>Energy Intelligence Group</u>, 948 F.3d at 276 (quoting § 1202(b)).

In Counts II and IV of the complaint, Emmerich alleges that Particle violated § 1201, and in Count III, it charges violations of § 1202(b)(1) and (2).  In its motion for summary judgment as to DMCA liability, Emmerich seeks summary judgment that Particle violated § 1201 "by circumventing technological measures (i.e., paywalls) which Emmerich had in place to prevent the infringement of its copyrights," as charged in Count II, and that Particle violated § 1202 "by deleting Emmerich's copyright management information and then republishing Emmerich's Articles using false CMI," as alleged in Count III.[5]  In response, Particle asserts that Emmerich's motion is premature as discovery on these claims is ongoing; in support, it submits counsel's affidavit pursuant to Rule 56(d).  But Particle also maintains that there are genuine issues of material fact which preclude summary judgment on these claims in any event.  Based on the following, summary judgment will be denied.

<u>Circumvention</u>

Emmerich alleges the following:

At least 7,479 articles stolen from the <u>Greenwood Commonwealth</u> and <u>McComb Enterprise-Journal</u> websites were protected by paywalls intended to limit access to

---

[5]   Plaintiff does not seek summary judgment on the charge in Count IV that the NewsBreak app violates § 1201(a)(2), which prohibits trafficking in circumventing technology.

paying customers and to protect Emmerich's copyrights in said articles.  Each time a reader clicked through, Particle breached Emmerich's paywall to fetch and republish the article.  Upon information and belief, this happened approximately 850,000 times for the articles from Greenwood and McComb.  On each occasion when these articles were stolen, Particle's web crawler used technological methods to hack and circumvent these paywalls.

According to Emmerich, the Greenwood Commonwealth and the McComb Enterprise-Journal websites operated behind "hard paywalls," which meant that "while an online reader could view a headline and short snippet without subscribing, they could only view the entire article by subscribing (i.e., "paying"), obtaining a password and then entering that password each time they wanted to view an article"; and there is no record of Particle having been a subscriber.  Emmerich thus contends that it has necessarily established its entitlement to summary judgment on its circumvention claims under § 1201.  In the court's opinion, however, factual issues preclude summary judgment on these claims.

In Zhong's affidavit, submitted in response to Emmerich's motion, he states that as a technical matter, Emmerich's web crawler is not capable of circumvention so that the content the web crawler retrieved from these two sites must necessarily have been available without a subscription.  Particle claims that this fact is corroborated by proof that content scaped/fetched by Particle from other Emmerich websites protected by paywalls

included only the limited "snippet" available to non-subscribers, whereas the content retrieved from the Greenwood Commonwealth and McComb-Enterprise Journal were the full-text articles.  This factual conflict alone precludes summary judgment.[6]

Moreover, Particle has raised a potentially viable limitations defense as to claims based on articles that were alleged to have been stolen from behind Emmerich's paywalls prior to January 2020.  The complaint broadly alleges that Particle's illegal conduct commenced in 2018 and continued through 2021; and since Emmerich filed its first complaint in this cause in January 2023, then recovery for any acts of circumvention occurring before January 2020 is potentially barred by the applicable three-year statute of limitations.  See 17 U.S.C. § 507 ("No civil action shall be maintained under the

---

[6]    The court additionally notes that Particle has presented an e-mail thread between the publishers of the two newspapers and Emmerich's president, Wyatt Emmerich, which reflects that the paywall of the Greenwood Commonwealth was not employed at all times but rather was removed in emergencies, such as ice storms and hurricanes, perhaps up to eight days a year.  As Emmerich has not identified the specific articles retrieved or the time frames in which they may have been retrieved and further has not identified the specific times when the paywall was not functioning, the court could not conclude that summary judgment was in order on claims based on articles retrieved from the Greenwood Commonwealth website.  That is, Particle has created a question of fact as to whether plaintiff's hard paywall constituted a technological measure that effectively controlled access to its copyrighted work.

provisions of this title unless it is commenced within three years after the claim accrued.").[7]

CMI Claims

The purpose of § 1202 is to safeguard the integrity of copyright management information (CMI), which is defined, in part, as information conveyed in connection with copies of a work, including the title of the work, the author of the work, the name of the copyright owner, and terms and conditions for use.  17 U.S.C. § 1202(c).  Section 1202(a) makes it unlawful to provide false CMI or distribute or import for distribution false CMI knowingly and with the intent to induce, enable, facilitate, or conceal infringement.  17 U.S.C. § 1201.  Section 1202(b) prohibits three kinds of acts:  the removal or alteration of CMI, § 1202(b)(1); the distribution of CMI with deleted or altered CMI, § 1202(b)(2); and the distribution of works with deleted or altered CMI, § 1202(b)(3).  All of these provisions require that the defendant take the prohibited act "knowing, or ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement...."  Emmerich charges in Count III, in pertinent part, that

---

[7]   Emmerich's does not identify ceither the specific articles allegedly stolen from behind the Greenwood Commonweath and McComb-Enterprise Journal paywalls, the timeframe(s) in which they could have been accessed or the dates on which paywalls were allegedly breached.  These are matters defendant will have an opportunity to explore through discovery.

> Each time Particle stole an Emmerich article it removed and altered Emmerich's copyright management information by changing Emmerich's digital filename and substituting its own digital filename in violation of 17 U.S.C. §1202(b)(1).
>
> Each time Particle re-published Emmerich's articles knowing that the copyright management information had been altered without authority of the copyright owner constituted a separate violation of 17 U.S.C. §1202(b)(2), entitling Emmerich to statutory damages for each such act in an amount not less than $2,500.00 or more than $25,000.00 per act. Each page view (4,178,871) constituted a separate act of re-publication with altered copyright management information by Particle.[8]

Exhibit D to the complaint is a 316-page document listing the title and a brief description of each of thousands of Emmerich articles allegedly republished by Particle with altered CMI.

Emmerich seeks a ruling that, as a matter of law, "Particle violated § 1202 by deleting Emmerich's [CMI] and then republishing Emmerich's Articles using false CMI." It argues that, given the broad definition of CMI, it is entitled to summary judgment as to these claims because Particle

---

[8]   The complaint incorrectly cites § 1202(b)(2) as the basis for Emmerich's claim that Particle republished its articles with altered CMI. Subsection (b)(2) addresses distribution of CMI apart from distribution of a copyrighted work, and there is no allegation that this occurred. The applicable subsection is instead (b)(3), which covers claims that a defendant distributed copyrighted works with altered CMI. See Stevens v. Corelogic, Inc., 899 F.3d 666, 673 n.3 (9th Cir. 2018) (finding that plaintiff did not plausibly state a claim under 1202(b)(2) different from his claims under 1202(b)(3) where he did not "specifically allege any instances involving the distribution of altered CMI separate from the distribution of the copyrighted photographs").

systematically altered, removed and replaced plaintiff's digital filenames displayed on plaintiff's websites, i.e., the URLs, which identified both the names of the Emmerich websites and the titles of the articles. Emmerich further argues the scienter requirement is established by proof that Particle deleted Emmerich's genuine "share" button and substituted it with a counterfeit Particle share button. Emmerich asserts:

> This was deliberately designed to induce copyright infringement. The Emmerich genuine share button produced the authentic Emmerich URL, bringing readers to its legitimate website. Particle's counterfeit share button produced a counterfeit URL, bringing readers to Particle's website, thus inducing and facilitating copyright infringement. The genuine Emmerich URL included the name of the Emmerich website and the title of the story.[9]

Emmerich also maintains that by replacing its URLs with its own URLs, Particle facilitated its own copyright infringement by directing readers to its website to view articles and "the

---

[9]   The only alleged CMI identified in Emmerich's complaint is its URLs, which Emmerich contends it uses as filenames. However, in its motions, Emmerich argues that the following also constitute its CMI:  "banners/logos, menu button, share button, byline of the particular writer, copy link button, print PDF button, which produced a print-friendly presentation of the article with the genuine URL at the bottom, the byline identifying the writer and many other engagement features." Particle has objected to the court's consideration of these unpled allegations, and Emmerich has failed to respond to this objection. Accordingly, arguments related to these belatedly-asserted categories of CMI will not be considered by the court. See Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

removal of Emmerich's other CMI concealed the identity of the actual copyright owner."  The court concludes that Emmerich's motion on the § 1202 claims should be denied.[10]

The DCMA provides protection for copyrighted information; and it is undisputed, as Particle has asserted in its response, that some of the articles/content allegedly retrieved by Particle from Emmerich websites was not copyrightable for various reasons and hence not protected by the DMCA.  This includes third-party submissions, articles by other entities such as the Associated Press, obituaries, engagement/wedding

---

[10]   Among other reasons for denying Emmerich's request for summary judgment on its claim under § 1202(a), Particle argues that the complaint does not actually purport to state a cause of action under § 1202(a) and instead refers only to alleged violations of § 1202(b)(1) and (b)(2).  Particle is correct that subsections (a) and (b) of § 1202 address distinct violations and that Emmerich did not cite § 1202(a) in the complaint. However, the factual allegations of the complaint control, and in the court's view, the factual allegation that Particle removed Emmerich's CMI and republished Emmerich articles with Particle's own digital filename, suggests a violation of § 1202(a).  See Wright v. Miah, No. 22-CV-4132-CBA-JRC, 2023 WL 6219435, at *9 (E.D.N.Y. Sept. 7 2023) (quotation marks and citations omitted) (in granting motion for default judgment for violation of § 1202(a) where complaint referenced only § 1202(b), court stated that "the removal of CMI in violation of ... § 1202(b) and replacing it with false CMI in violation of ... § 1202(a) are distinctly separate violations"; "plaintiff's failure to cite a subsection of the statute, or to cite the correct one, in no way affects the merits of a claim.  Factual allegations alone are what matters"; and plaintiff's allegation that defendant removed plaintiff's copyright information from artwork and "altered" it by affixing defendant's logo onto the artwork and ascribing defendant's "terms and conditions" to each listing of the artwork for sale "appropriately constitutes a violation of section 1202(a)").

announcements, legal notices and menus.  See Compendium of U.S.

Copyright Office Practices §§ 1108.2, 1108.2A, 1108.2B and

1108.2C (3d. ed. 2021),

https://www.copyright.gov/comp3/docs/compendium.pdf (last

accessed June 25, 2024) (setting forth, inter alia, requirements

to obtain registration of newspapers).  Particle states that it

has attempted without success to identify each article among the

thousands of articles referenced in the complaint's CMI count

that fall within these categories.  In rebuttal, Emmerich

concedes Particle's point that some of the content at issue is

not copyrightable; but rather than clarify the precise articles

to which this concession applies, it merely broadly declares

that it "has voluntarily relinquished its claims with regard to

every single article in every single category which Particle has

identified as possibly questionable."  The court is unable, and

for that matter, unwilling to undertake its own investigation to

determine which of the articles referenced in the complaint,

numbering in the thousands, fit within a category that is not

subject to copyright protection.  Rather, given Emmerich's

assertion that it is voluntarily relinquishing claims based on

articles in the various categories identified by Particle, the

court will direct that Emmerich conduct its own good faith

review and file a notice of voluntary dismissal as to each such

article.  Thereafter, should Particle be of the view that

17

Emmerich has omitted any such articles from its notice of dismissal, it is certainly free to move for dismissal of any claim based on additional articles.

As to the remaining articles, Particle does not deny that filenames *can* constitute CMI.  See Energy Intelligence Grp., 948 F.3d at 277 (quoting § 1202(c)(1)) ("Nothing in § 1202 indicates that a digital file name cannot be CMI.  Rather, a PDF's file name may be CMI if it is 'conveyed in connection with copies' of the underlying work and contains a 'title and other information identifying the work.'").  But Particle does dispute that Emmerich's URLs constitute CMI, as opposed to merely internet addresses.  In support of this contention, it points to examples of Emmerich articles that do not conform to Emmerich's professed file-naming practice, i.e., a file name that consists of the URL containing the title of the article and name of the newspaper in which it appeared.  Particle does not explain, however, why file names that do conform to this practice would not constitute CMI. Arguably, then, Emmerich could be entitled to summary judgment as to claims based on such articles, except that as to these claims, there is the same potential limitations issue that the court identified supra at p. 13 with respect to Emmerich's circumvention claims.  Accordingly, the court will deny Emmerich's motion for summary judgment on the CMI claims, without prejudice, except as to claims based on content to which

copyright protection does not extend, which Emmerich will voluntarily dismiss with prejudice.

DAMAGES CALCULATION MOTION

Under § 1203(c), any time prior to final judgment, a plaintiff may elect to seek an award of either actual damages (plus profits of the violator) or statutory damages, which under § 1201 is $2,500 per act of circumvention, and under § 1202 is the sum of not less than $2,500 or more than $25,000 for each violation.  Emmerich has moved for summary judgment on its claim for DMCA damages, and specifically, seeks findings by the court that (1) each page view of "self-hosted" Emmerich articles on Particle's website or in the Newsbreak app under a Newsbreak filename constituted a separate violation of § 1202 supporting an award of statutory damages, and (2) each page view of Emmerich articles stolen from behind paywalls constituted a separate act of circumvention supporting an award of statutory damages.  However, as Emmerich has not established that it is entitled to summary judgment as to liability on any of its DMCA claims, a ruling on its entitlement to damages at this time would be premature and/or advisory.  Accordingly, plaintiff's motion will be denied without prejudice.

COPYRIGHT INFRINGEMENT MOTION

By Count I in Civil Action No. 3:23-cv—26-TSL-MTP, Emmerich alleges that it is the owner of valid copyrights in 6,221

registered articles and the photographs contained therein;

attached to that complaint are copies of the registrations,

which give rise to a rebuttable presumption that a copyright is

valid.  In Civil Action No. 3:23-cv-391-TSL-MTP, Emmerich

alleges that it is the registered owner of 11,818 articles.[11]

Pointing to its copyright registrations and Particle's

concession that during the "glitch" periods, full-text versions

of Emmerich articles were displayed on NewsBreak, Emmerich seeks

summary judgment as to Particle's liability for its practice of

"self-hosting" complete copies of Emmerich Articles on its

website and for Particle's display of the photographs which

accompanied those articles with only minor (if any)

alterations.[12]  See Baisden v. I'm Ready Prods., Inc., 693 F.3d

491, 499 (5th Cir. 2012) ("To prove copyright infringement a

party must show that (1) he owns a valid copyright and (2) the

defendant copied constituent elements of the plaintiff's work

---

[11]   It is unclear to the court whether the number 11,818 is the
total number of articles at issue in these actions or whether
that number is in addition to the 6,221 number alleged in the
original complaint.  And notably, while the court has not made
an exhaustive comparison, it appears that the lists of
registrations appended to the second complaint are the same
lists that were filed with the original complaint.  Thus, it is
not clear to the court how many registrations Emmerich purports
to have or whether there is record evidence of registrations
alleged in 3:23-cv-391-TSL-MTP.

[12]   It appears to the court (and to defendant) that plaintiff
requested relief relates only to the content which was self-
hosted on NewsBreak.

that are original.") (internal citation omitted).  Emmerich
submits that summary judgment is appropriate notwithstanding
Particle's assertion of the fair use defense in its answer,
citing Judge Johnson's ruling in the parties' prior litigation
over Particle's self-hosting of Emmerich articles that "Particle
Media's display of the Registered Works in full-text format on
the NewsBreak app is not fair use and is unprotected by the
affirmative defense codified in § 107."  Emmerich Newspapers,
Inc. v. Particle Media, Inc., No. 3:21-CV-32-KHJ-MTP, 2022 WL
3222892, at *3 (S.D. Miss. Aug. 9, 2022)(explaining that "fair
use" doctrine, later codified under § 107 of the Copyright Act,
is a "'limited privilege in those other than the owner of a
copyright to use the copyrighted material in a reasonable manner
without the owner's consent" where 'rigid application of the
copyright statute would stifle the very creativity it is meant
to foster.'") (quoting Bell v. Eagle Mt. Saginaw Indep. Sch.
Dist., 27 F.4th 313, 321 (5th Cir. 2022) (cleaned up)).

    The court is not persuaded that summary judgment should be
granted on these claims.  In contrast to the nine articles at
issue in Judge Johnson's case, which is a manageable number,
Emmerich's current complaints raise infringement claims as to
thousands of articles, set out in unnumbered lists appended to

each complaint.[13]  It is not clear to the court even how many articles are the subject of Emmerich's complaints, much less which articles are the subject of the motion.  It seems (but is not clear) that the motion may be limited to 8,071 articles,[14] but Emmerich has not actually identified for the court or the defendant with clarity the specific number of articles or the specific articles at issue.  Without specific identification of the articles, neither Particle nor the court is in a position to determine whether there is a valid defense to a given article, such as, for example, that the content is not copyrightable, that its republication constitutes fair use, or that the claim is time barred.

Accordingly, Emmerich will be directed to file notice of voluntary dismissal as to the relinquished infringement claims relating to non-copyrightable articles/photographs and its

---

[13]   While the court is not certain, it does not appear from its perusal of the first pages of these lists that they are be duplicative of each other.

[14]   In its initial brief, Emmerich has purported to seek summary judgment for Particle's display of approximately 17,000 Emmerich articles, yet in its rebuttal, Emmerich states that the court could grant summary judgment on 8,071 of the total "11,818 articles included as exhibits to the Complaints."

motion as to the remaining claims will be denied without prejudice.[15]

CONCLUSION

Based on the foregoing, it is ordered that Emmerich's motions for summary judgment as to DMCA liability, DMCA damages calculation and copyright infringement liability are denied.  It is further ordered that within ten days, Emmerich shall file a notice of voluntary dismissal of all claims based on content which is not subject to copyright protection.

SO ORDERED this 25th day of June, 2024.

_/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE

---

[15]   For future motions, Emmerich is directed identify by number or by some other system of identification the specific articles to which the motion is directed.