IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INCORPORATED** | **PLAINTIFF** |
| VS. | CIVIL ACTION NO. 3:23CV26 TSL-MTP |
| **PARTICLE MEDIA, INC. D/B/A NEWS BREAK and JOHN DOES 1-10** | **DEFENDANTS** |

**CONSOLIDATED WITH**

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INCORPORATED** | **PLAINTIFF** |
| VS. | CIVIL ACTION NO. 3:23CV391 TSL-MTP |
| **PARTICLE MEDIA, INC. D/B/A NEWS BREAK** | **DEFENDANTS** |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RESPONSE
TO DEFENDANT'S MOTION TO STRIKE**

---

The purpose of Rule 26(e) is to prevent prejudice and surprise. *See Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994). Furthermore, F.R.C.P. Rule 37 precludes a party from using at trial a witness or evidence that was untimely or inadequately disclosed "unless the failure was substantially justified *or is harmless."* Fed. R. Civ. P. 37(c)(1)(emphasis added). Particle makes no plausible claim that it has been harmed, prejudiced or surprised by the testimony or supplemental reports of either Mr. Griffith or Mr. Huffman. Nevertheless, Particle asks the Court to strike certain updates and testimony provided by both experts. The motion should be denied for the reasons set forth below.

First, the factual background:

1

**Mr. Griffith**

Mr. Griffith submitted his Supplemental Report on June 21 after the deposition of Particle's expert, Mr. Gianturco. As a matter of background, Mr. Gianturco managed to obtain hundreds of pages of HTML code for a small number of Emmerich articles from a website known as "Wayback.org" ("Wayback"), an internet archive website. Mr. Gianturco claimed that his ability to obtain Emmerich articles from Wayback before encountering a paywall proved that Emmerich's paywall did not work when the articles appeared on Emmerich's original website.

However, during his deposition Mr. Gianturco acknowledged, for the first time, that "Wayback" had inserted thousands of lines of its own code in the middle of Emmerich's original code, and further admitted that he had no idea what that foreign Wayback code did or how it interacted with Emmerich's paywall code:

> Q. To the extent code, HTML code, which appears in your exhibit, says "archive.org," that code was inserted by the Wayback Machine and did not exist at the original website where the article was taken, correct?
>
> . . . .
>
> A.    I think what I'm comfortable saying is that certainly web.archive.org and those references that you're referring to did not exist on the newspaper website.
>
> Q. Perfect. Thank you. And can you identify all of the HTML code that was inserted -- not manipulated -- but inserted by Wayback?
>
> A.    I mean, on the fly, I can't. It's certainly within my capabilities, but I am not going to go through that sort of exercise on the fly here.

Ex. A., Gianturco Depo. Transcript, pp. 17-18.

> Q. All right. Where did this code come from that's on page 21 -- or line 21 through 23 on page 46 of your report?
>
> A.    What do you mean by where did it come from?
>
> Q.    Well, did it come from Emmerich's native website?

2

> A. No.
>
> Q. Okay. Are you aware of all of the ways -- let's call this -- let's call this "Wayback code" for lack of a better term. Are you aware of all of the ways that the Wayback code interacts with Emmerich's native code?
>
> A. If the question is am I aware right now, no. Could I -- no. I mean, I'm aware of many of the ways. I could not be aware of all the ways. Again, I would have to have their server code to understand that.

Id. pp.21- 22.

In other words, Mr. Gianturco could not definitely say whether the code inserted by Wayback may have impaired the operation of Emmerich's paywall code. *None* of this critical information was included in Mr. Gianturco's expert report. He did not state in his initial report that additional HTML code had been inserted by Wayback and he did not admit that he had no idea what that additional code did. Mr. Griffith's supplemental report simply addressed this glaring deficiency in Mr. Gianturco's testimony -- deficiencies which could not have been identified prior to Mr. Gianturco's testimony.

Emmerich made Particle aware of Mr. Griffith's likely testimony about this glaring deficiency prior to Particle's deposition of Mr. Griffith, and Particle had every opportunity to ask him about it. Particle suffered no prejudice at all and its motion to strike this portion of Mr. Griffith's testimony should be denied.

**Mr. Huffman**

As a threshold matter, Particle makes the remarkable argument that "the Court should strike the expert designation of Mr. Huffman because he is clearly a retained expert, as he is being paid $350 an hour, see [Doc. 88-1] at ¶(vi), and his expected testimony goes beyond any personal experiences he had as the accountant for Plaintiff." "Remarkable" in the sense that

3

Particle already made this argument once and the Court ruled against it barely one month ago.

*See* Doc. 103. Using language directly applicable to this motion, the Court concluded that,

> Plaintiff has not retained or specially employed Huffman to testify in this case and finds that Plaintiff should be granted leave to amend its designation allowing Huffman to be designated as a non-retained expert. Indeed, Huffman has been intricately involved with Plaintiff's finances well beyond two decades. As Plaintiff's accountant and handler of all financial matters, Huffman's awareness of Plaintiff's decreased revenue during the period in which the alleged copyright infringement occurred can certainly be attributed to his "ground-level involvement in the events giving rise to the litigation." *Downey*, 633 F.3d at 6.
>
> Therefore, Huffman may be properly designated as a non-retained expert who will offer opinions from his "firsthand knowledge of activities" in which he was personally involved before the commencement of this lawsuit. *See Beane v. Utility Trailer Mfg. Co.*, 2013 WL 1344763, at *3 (W.D. La. Feb. 2, 2013); *see also Teen-Ed, Inc. v. Kimball Int'l Inc.,* 620 F.2d 399 (3d Cir. 1990) (holding that a party's accountant sufficiently familiar with a party's finances before and apart from litigation could provide lay witness testimony); *Louisiana Med. Mgmt. Corp. v. Bankers Ins. Co.*, 2007 WL 2377137, at *1 (E.D. La. Aug. 16, 2007) (recognizing the Fifth Circuit's adoption of *Teen-Ed* in *Dijo, Inc. v. Hilton Hotels Corp.,* 351 F.3d 679 (5th Cir. 2003)).
>
> For a non-retained expert, all that is required is disclosure of the "(i) subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of those facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "The purpose of Fed. R. Civ. P. 26(a)(2)(C) is to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *Jones v. Lanter Delivery Sys.,* 2016 WL 3265293, at *1 (N.D. Miss. June 14, 2016).

Doc. #103, pp. 4-5

Particle complains that Emmerich has made a number of updates and revisions to Mr. Huffman's damage calculations between the time the experts were initially designated on February 8 and the time Particle deposed those experts in June (i.e., the week before the close of

4

discovery). However, Particle ignores the fact that Emmerich was under *an affirmative duty* to supplement and correct this information under F.R.C.P. Rule 26(e):

> (1) *In General.* A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .
>
> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

F.R.C.P. Rule 26. Particle would have the Court penalize Emmerich for doing precisely what it was required to do under Rule 26.

**<u>Argument</u>**

Particle cites but a single case in support of its motion, *Davenport v. HansaWorld USA, Inc.*, 2015 U.S. Dist. LEXIS 82037. But that case is easily distinguishable. *Davenport* involved a motion to strike the entire testimony of a witness who was only identified one day prior to the close of discovery. "There is no indication that HansaWorld knew or had reason to know of Gregory's existence or involvement in this case prior to that time." *Id*. at 8. As a result, "[t]he discovery deadline passed before Defendant could propound written discovery regarding Gregory, much less take Gregory's deposition." *Id*. at *5. The Court concluded that the defendant "was unduly surprised by Davenport's last-minute supplementation," citing. *Bennett v. GEO Group, Inc.*, 2011 WL 4625667, at *2 (S.D. Miss. Oct. 3, 2011) ("The purpose of requiring a listing of persons with knowledge, even early on during the discovery phase . . . is to allow the

opposing party to interview or depose them, if desired, or to conduct other investigation, and to learn the facts before discovery closes.")

Here, both Mr. Griffith and Mr. Huffman were identified as expert witnesses well within the deadlines. They were identified as expert witnesses on February 8, prior to the expiration of the deadline for designation of experts and over four months before Particle chose to take their deposition. And because Emmerich inadvertently designated Huffman as a retained expert, it provided a detailed report depicting the proposed methodologies Mr. Huffman would follow in calculating actual damages - far more than is required for a non-retained expert. This Court later agreed that Mr. Huffman is not a retained expert and, as such, no expert report was even required for him.

Emmerich voluntarily rescheduled Mr. Huffman's expert deposition in order to provide Particle sufficient time to prepare questions about this fourth methodology. And, most important, Particle actually deposed both Mr. Huffman and Mr. Emmerich (Emmerich's two damages experts) at length over the course of four days about the four proposed methodologies.

Here, Particle wants to preclude well-known witnesses from testifying about information and opinions which logically stem from their original designations and result from additional information obtained since the time of those designations. And Particle did, in fact, question both witnesses at length about these opinions. There can be no possible claim of harm or prejudice under the circumstances.

With regard to Huffman, the addition of a fourth methodology to Emmerich's actual damage calculations prior to the deposition of either of Emmerich's damage experts was entirely harmless. The fourth methodology is quite simple -- take the lost revenues (previously calculated in the the first proposed methodology) and multiply by six to derive a "diminution in enterprise

value" based on the value of the lost cash flow. Note again that, as a non-retained expert, Mr. Huffman was not even required to submit an expert report. Emmerich provided an updated spreadsheet of his proposed methodologies, including the new "Diminution in Enterprise Value" methodology, precisely so Particle would NOT be surprised and could question him about this methodology. The idea that Particle needed additional time to consider and analyze this fourth methodology is farcical.

The Court's discretion to strike is to be guided by the following four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990) (citation omitted). Particle not only knew about Mr. Griffith's and Mr. Huffman's existence and the fact that they would testify as experts, but they had not yet deposed either of them and still had time to do so.

For the foregoing reasons, Particle's Motion to Strike should be denied.

RESPECTFULLY SUBMITTED, this the 3rd day of July, 2024.

BY: /s/ Wilson H. Carroll
Wilson H. Carroll (MSB#5894)

Wilson H. Carroll
WILSON CARROLL, PLLC
2506 Cherry Street
Vicksburg, Mississippi 39180
(601)953-6579
wilson@wilsoncarroll.com

### CERTIFICATE OF SERVICE

I, Wilson H. Carroll, hereby certify that I have this day filed the foregoing document via the Court's automated filing system, which automatically forwarded copies to all counsel of record.

So certified, this the 3rd day of July, 2024.

BY: /s/ <u>Wilson H. Carroll</u>
    Wilson H. Carroll (MSB#5894)