**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INC.** | **PLAINTIFF** |
| **VS.** | **CIVIL NO. 3:23CV26 TSL-MTP** |
| **PARTICLE MEDIA, INC.** | **DEFENDANT** |

**CONSOLIDATED WITH**

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INC.** | **PLAINTIFF** |
| **VS.** | **CIVIL NO. 3:23CV391 TSL-MTP** |
| **PARTICLE MEDIA, INC.** | **DEFENDANT** |

---

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND FOR STAY OF FURTHER PROCEEDINGS, AND, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF JULY 29, 2025 SUMMARY JUDGMENT ORDER

---

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b) and any other applicable law, Plaintiff Emmerich Newspapers, Inc. (hereinafter "Plaintiff" or "Emmerich"), respectfully requests that this Court certify for interlocutory appeal (1) its Opinion and Order dated July 29, 2025, in which the Court denied in part Emmerich's motion for summary judgment (the "Summary Judgment Order") and its (2) Opinion and Order dated August 8, 2025, in which the Court excluded Plaintiff's experts Wyatt Emmerich and Anthony Huffman (the "Order Excluding Experts").

In the alternative, Plaintiff also requests that the Court reconsider and vacate the Summary Judgment Order and grant summary judgment in favor of Emmerich and against Defendant Particle Media, Inc. (hereinafter, "Particle" or Defendant") on all issues. Plaintiff further requests that this Court stay proceedings in this matter pending resolution of this motion,

including for reconsideration and interlocutory appeal. The Court in its July 29, 2025 Order granted summary judgment to Particle on multiple issues Plaintiff now argues should be certified by this Court for interlocutory appeal.

*First*, the Court found summary judgment was appropriate on Emmerich's claims to 748 framed articles appearing on NewsBreak. It based this ruling on its adoption of the "server test" promulgated by the 9th Circuit. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159–60 (9th Cir. 2007). In so finding, the Court ruled that because Particle did not store the articles on its servers it did not violate Emmerich's right to exclusively display its copyrighted content under § 106(5) of the Copyright Act. The Court rejected Emmerich's argument that framing constitutes infringement on its display right as explained by the court. *Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 WL 5629514, at *12 (N.D. Tex. Nov. 22, 2017). Emmerich maintains with this motion that the Court should not apply the server test in evaluating the framed-view articles and urges the Court to concur with the many federal courts which have held the server test is contrary to the language and legislative intent of the Copyright Act.

Second, the Court granted summary judgment to Particle on Emmerich's CMI claims arising from full-text view articles displayed on NewsBreak. Plaintiff argues the Court improperly decided URLs are not copyright management information ("CMI") and improperly refused to consider Emmerich's argument that other forms of CMI were altered or removed by Particle. In its ruling, this Court rejected Emmerich's argument that URLs are filenames, which if conveyed in connection with copies of a copyrighted work, can constitute CMI. *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 263 (5th Cir. 2020). Emmerich argues the Court incorrectly found URLs cannot be considered CMI for purposes of the Digital Millenium Copyright Act ("DMCA") and their removal constitutes a violation of § 1202(b)(1).

*Third*, Plaintiff additionally submits that the Order Excluding Experts A. Huffman and W. Emmerich should be certified for immediate appeal. In that separate ruling, the Court disqualified A. Huffman and W. Emmerich from serving as experts in this matter on the basis of the reliability of their testimony. Plaintiff argues this evaluation included consideration of factors better suited in evaluation of the weight of the evidence, rather than its admissibility, and the experts should not have been excluded.

For these reasons, Emmerich submits both the Summary Judgment Order and Order Excluding Experts for certification for interlocutory appeal under 28 U.S.C. § 1292(b). Emmerich respectfully requests the Court grant its motion certifying the three following questions for interlocutory appeal and a stay of this matter pending appeal. In the alternative, Emmerich requests reconsideration of the Summary Judgment Order. Reconsideration of that order ought to be issued on the basis of novel legal developments regarding the server test, and in consideration of Emmerich offering proof of the violation of its CMI rather than a new claim.

## II. RELEVANT STANDARDS

### A. Legal Standard for a Motion to Certify an Interlocutory Appeal

The standard applicable to whether a district court should certify an order for interlocutory review are set forth in 28 U.S.C. § 1292(b), which in relevant part provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

In the 5th Circuit, all three of the above requirements "must be met before the district court may properly certify an interlocutory order for appeal." *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981).

1. Controlling Question in an Interlocutory Appeal

A question is controlling if "resolution of that issue on appeal could materially affect the outcome of the litigation in the district court." *Castano v. American Tobacco Co.,* 162 F.R.D.112, 115 (E.D. La. 1995), *modified*, 889 F. Supp. 904 (E.D. La. 1995). "A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *Silverthorne Seismic, LLC v. Sterling Seismic Services, Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025) (quoting *ICTSI Oregon, Inc. v. Int'l Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022)). Controlling questions thus "include whether a claim exists as a matter of law, whether a defense that will defeat the claim is available, and questions as to subject-matter jurisdiction, proper venue, personal jurisdiction, and standing to maintain the action." *Id.* at 598–99 (citing 19 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 203.31[2] (3d ed. 2024)).

2. Interlocutory Appeals Require a Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion exists under § 1292(b) if the controlling law is unclear. Courts traditionally will find a substantial ground for a difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point […] or if novel and difficult questions of first impression are presented. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). Identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement. *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994); *see also Oyster v. Johns-Manville Corp.*, 568 F. Supp. 83, 88 (E.D. Pa. 1983). Even if there are no cases directly conflicting with a district court's application of a law, there may be substantial ground for difference of opinion where there is a legal issue over which

reasonable judges might differ, and such uncertainty provides a credible basis for a difference of opinion on the issue. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688, (9th Cir. 2011) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1028 (9th Cir. 1982) (Boochever, J., dissenting on other grounds)).

3. <u>An Interlocutory Appeal Must Materially Advance the Ultimate Termination of the Litigation</u>

The third prong of § 1292(b) requires the assessment of whether resolution of the controlling question would materially affect the outcome of litigation in the district court. The 5th Circuit will look to whether their answer to a question can "immediately and materially impact an action by 'terminat[ing] [it] in the district court' or by restoring it from an incorrect termination." *Silverthorne Seismic*, 125 F.4th at 598 (quoting 19 Moore, et al., MOORE'S FEDERAL PRACTICE § 203.31[2] (3d ed. 2024)) (alteration in original).

**B. Motion for Reconsideration**

Under Federal Rule of Civil Procedure 54(b), the court may revise at any time "any order or decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" before the entry of judgment adjudicating all of the claims and all parties' rights and liabilities. When an order is issued pursuant to 54(b) a court may grant a party's motion for reconsideration "for any reason it deems sufficient." *U.S. v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (quoting *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010)). Under this standard, reconsideration orders may be granted "even in the absence of new evidence or an intervening change in or clarification of substantive law." *Saqui*, 595 F.3d at 210–11. The Rule 54(b) analysis is flexible, meant to change in its approach to new arguments as the case evolves allowing flexibility, reflecting the "inherent power of the rendering district court to

afford such relief from interlocutory judgments as justice desires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 337 (5th Cir. 2017).

## III. ARGUMENT

### A. Plaintiff Requests Certification of Interlocutory Appeal on Three Questions

Plaintiff seeks certification of an interlocutory appeal based on three key controlling questions. The first two questions are from the Summary Judgment Order, while the third is from the Order Excluding Experts. The first question is whether the server test is a proper standard for evaluating copyright infringement, the second is whether URLs can be considered copyright management information under the DMCA, and, relatedly, whether Emmerich can be allowed to argue that other forms of CMI were altered or removed by Particle, and the third is whether questions regarding the facts undergirding an expert report should be considered in a *Daubert* challenge.

1. <u>Is the Server Test Proper for Evaluating Copyright Infringement?</u>

a. <u>The Question of the Server Test is a Proper Controlling Question</u>

The following question is controlling, and therefore appropriate for immediate appeal:

> *Whether the "server test" is the proper standard for evaluating infringement on the copyright holder's exclusive display right under 17 U.S.C. § 106(5).*

In its Summary Judgment Order, this Court granted summary judgment for Particle on Emmerich's infringement claims to 748 of its articles on the grounds that Particle did not violate Emmerich's exclusive right to display its copyrighted content when it displayed Emmerich's articles in framed-view on the NewsBreak app. *See* Summ. J. Order at 34. In so finding, the Court applied the "server test" established by the 9th Circuit in *Perfect 10*. *See* Summ. J. Order at 34; 508 F.3d at 1160. The server test, as explained by this Court, holds, "the owner of a computer that does not store and serve the electronic information to a user is not displaying that

information, even if such owner inline links to or frames the electronic information." Summ J. Order at 28 (quoting *Perfect 10*, 508 F.3d at 1160). Applying the server test, this Court concluded that because Particle "did not store any of these images as electronic information and serve electronic information to NewsBreak users, [Particle] did not violate Emmerich's exclusive right to display its copyrighted content," and thus granted summary judgment in Particle's favor as to the 748 articles. Summ. J. Order at 34. But, as this Court acknowledges, the use of the server test in evaluating a § 106(5) display right is not mandatory in the 5th Circuit and has been found by other district courts to be contrary to the text and intention of the Copyright Act. Summ. J. Order at 33. Resolving the question of whether the server test is the proper analysis of the display right and whether it comports with the language and legislative intent of the Copyright Act would be decisive on Emmerich's claims and would materially affect the overall outcome of this litigation. *See Silverthorne Seismic*, 125 F.4th at 598.

b. <u>There is Substantial Ground for Difference of Opinion on the Server Test</u>

The question of whether the display right as defined by the Copyright Act is subject to the server test's storage requirement is one for which there is substantial ground for difference of opinion. There is no controlling precedent from the 5th Circuit on this issue. *See Couch*, 611 F.3d at 633. Federal district courts are also undecided on the server test's application.

This Court in its Summary Judgment Order found under the server test analysis Particle did not violate Emmerich's display right. In doing so, the Court acknowledged the question of whether the server test is the proper analysis of the display right under 17 U.S.C. § 106(5) is one that is unsettled in the 5th Circuit and is widely debated among federal district courts. *See* Summ. J. Order at 33. The 9th Circuit in *Perfect 10* in creating the server test is the only federal circuit court to have ruled on this question, and the 5th Circuit which controls here has not yet

undertaken it. The lack of controlling precedent on this issue weighs in favor of certification. *See ICTSI Oregon*, 22 F.4th at1130 ("The 'substantial grounds' prong [of § 1292(b)] is satisfied when . . . 'the court of appeals of the circuit has not spoken on the point…'") (internal citation omitted).

The Court in its decision points to a number of cases in which district courts have declined to apply the server test. *See* Summ. J. Order at 33 (citing *Leader's Inst.* 2017 WL 5629514, at *10; *Goldman v. Breitbart News Network*, *LLC*, 302 F. Supp. 3d 585, 590 (S.D.N.Y. 2018) (rejecting server test as not adequately grounded in text of the Copyright Act); and *Bowery v. Sites*, No. 2:21-CV-00567-DBB-JCB, 2024 WL 3416038, at *8–9 (D. Utah July 15, 2024) (concluding "that a defendant who embeds a copyrighted image on a webpage, without hosting the image on its servers, may infringe the copyright holder's display rights")). These several cases are only a few examples of the many district courts that have disagreed with the analysis applied by this Court in its Summary Judgment Order. *See e.g., Urbanimage Media LTD. v. IHeartMedia, Inc*., No. SA-24-CV-00623-XR, 2025 WL 2182458, at *7 (W.D. Tex. July 29, 2025) ("[T]he Court concludes that the server test runs *contra* to the text and legislative history of the Copyright Act."); *Prepared Food Photos, Inc. v. Chicken Joes, LLC*, No. 23-CV-3895-JGLC, 2024 WL 382529, at *1 (S.D.N.Y. Feb. 1, 2024) ("[T]he Court joins other courts in this district in finding that embedding a work such as an image constitutes 'display' that is actionable for infringing a copyright in the image"). The lack of consensus on this issue among district courts in 5th Circuit further supports Plaintiff's motion. *See White*, 43 F.3d at 378 ("[I]dentification of 'a sufficient number of conflicting and contradictory opinions' would provide substantial ground for disagreement" under § 1292(b)) (internal citation omitted).

Because of the widespread disagreement among federal courts and the fact that this issue has not been settled by the 5th Circuit, this question should be certified for appellate review under § 1292(b).

c. Determining the Application of this Question Would Materially Advance the Termination of This Litigation

A finding that the server test was not the proper analysis would restore infringement claims as to the 748 framed articles. In the Summary Judgment Order, the Court granted summary judgment in Particle's favor based on an analysis of the 9th Circuit's holding in *Perfect 10* and an application of the server test to the facts at bar. Reviving those 748 claims should be treated as materially altering this litigation. *See Silverthorne Seismic* 125 F.4th at 598.

2. May a URL Be Considered Copyright Management Information?

a. The Controlling Question is Whether a URL Can Be Considered Copyright Management Information

The following question is controlling, and therefore appropriate for immediate appeal:

*Whether under § 1202 a URL can be considered Copyright Management Information, and, if so, a URLs intentional removal constitutes a violation of § 1202(b)(1).*

In the Court's Summary Judgment Order, the ruling denying Emmerich's motion for summary judgment and granting Particle's motion for summary judgment as to the CMI claims arising from the full-text view articles was premised on the question of whether URLs are CMI. Summ. J. Order at 60. The Court iterates that to succeed on a § 1202(b)(1) claim, a plaintiff must show the alleged violator (i) without the authority of the copyright owner or the law (ii) intentionally removed or altered copyright management information (iii) knowing or having reasonable grounds to know it would induce, enable, or conceal an infringement of the federal copyright laws. Summ. J. Order at 54–55 (citing *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, No. CV H-19-2953, 2020 WL 5739138, at *10 (S.D. Tex. Sept. 24, 2020)). Here, resolving the question of whether a URL can be considered CMI under the DMCA would restore these claims

from summary judgment, immediately impacting the case. *See Silverthorne Seismic,* 125 F.4th at 599 (noting this type of controlling question is "why so many of [the 5th Circuit's] § 1292(b) appeals have come from dismissal or summary judgment").

b. There is Substantial Ground for Difference of Opinion on URLs as CMI

There are two different approaches that can be taken to this controlling question in the context of Emmerich's case. Both are premised on the question of textual interpretation of 17 U.S.C. § 1202(c), which defines CMI. The first is whether CMI should be interpreted broadly, the second is whether URLs should be treated as CMI in considering the particular facts of this matter.

The first version of this inquiry, on which there is substantial ground for difference of opinion, is whether all URLs should be considered CMI; and moreover, whether CMI should be treated expansively and broadly to include a range of forms of information associated with copyrighted work. Courts have consistently taken a broad view of what constitutes CMI, and there is no contrary case law to indicate a departure from that standard on this issue. *See, e.g.*, *Energy Intel.*, 948 F.3d at 277 ("CMI is defined broadly"); *Williams v. Cavalli*, No. CV 14–06659–AB (JEMx), 2015 WL 1247065, at *2 (C.D. Cal. Feb. 12, 2015) (finding pseudonymous signatures are CMI); *Goldstein v. Metro. Reg'l Info. Sys., Inc.*, Civil Action No. TDC-15-2400, 2016 WL 4257457, at *8 (C.D. Cal. Aug. 11, 2016) (finding a mark consisting of a copyright symbol and website address met the definition of § 1202(c)(3)); *Aaberg v. Francesca's Collections, Inc.*, 17-CV-115 (AJN), 2018 WL 1583037, at *7 (S.D.N.Y Mar. 27, 2018) (finding that on the issue of whether logos, website addresses, and social media handles can qualify under subsection (c)(7) there is "no support for [the] narrow view of § 1202(c)"). In defining CMI there is clear ground for difference from the court's incredibly narrow ruling, and indication that other

courts, including the 5th Circuit, may hold the alternative legal view that the standard should move towards flexibility and encompass a wide range of material, including, in relevant part, URLs. *See, e.g.*, *Energy Intel.*, 948 F.3d at 277.

Defining all URLs as CMI is predicated on 17 U.S.C. § 1202(c)(7), which states in relevant part that CMI includes "identifying numbers or symbols referring to such information or links to such information." At its core, a URL is a link to a website which would contain all relevant information regarding copyright. There is no legal support, nor has Particle provided such support, for a narrow interpretation of § 1202(c). Moreover, such broad consideration of CMI also ought to include the other pieces of CMI presented by Emmerich that it learned about through the process of this litigation, such as logos and bylines.

Beyond the initial question of whether URLs should broadly be considered as CMI, there is a second question at hand stemming from the particular facts in this case: whether Emmerich's particular URLs are indistinguishable from file names. Emmerich's URLs offer critical CMI that fits the definition of § 1202(c)(3), including the name of the publication and the name of the article itself, akin to a file name. File names may be CMI when conveyed "in connection with copies of the underlying work and contain[ing] a title and other identifying information of the work." *Energy Intel.*, 948 F.3d at 277 (internal quotation marks omitted); *see also Izmo, Inc. v. Roadster, Inc.*, Case No.18-cv-06092-NC, 2019 WL 13210561, at *3 (N.D. Cal. Mar. 26, 2019) (finding that plaintiff showed file names constituted CMI because they identified works in question and directly linked the photographs to the copyright registration). Thus, there is adequate space for the more pointed question of whether Emmerich's URLs in particular identified the works in question and directly linked the works to the Emmerich website where the article was stored as a digital file. In the report of Particle's purported expert B. Sell, he states

URLs are determined "depending on how a web administrator **chooses** to construct a website" and URLs "do not **have** to have a 'filename.'" Dkt. No. 179-2, ¶ 53 (emphasis added). Here, the URLs did have to contain file names and were determined based on how Emmerich constructed its website–where every article had to have the name of the publication and the name of the file. For these reasons, the question of whether Emmerich's URLs are in fact indistinguishable from file names pervades and has yet to be answered; and there is substantial ground for a difference of opinion from this Court on that query.

c. Resolving Whether URLs are CMI Would Materially Advance Termination of the Litigation

A finding that URLs are CMI, either broadly or in this particular iteration of URLs, would restore this matter from its termination in the Summary Judgment Order. In the Order, the finding that URLs were not CMI was the precursor to the granting of Particle's Motion for Summary Judgment on the DMCA claims for removal of CMI for full-text articles. This restoration from termination should be treated as material advancement of litigation. *See Silverthorne Seismic,* 125 F.4th at 598.

3. Are Questions Regarding the Factual Basis of an Expert Report Better Suited for Evaluation by a Judge or Through Cross Examination?

a. The Question of How Best to Evaluate the Expert Reports is Controlling

Finally, a controlling question relates in response to the Order Excluding Experts. That question is:

> *Are those challenged issues in the testimony of Wyatt Emmerich, and the resulting disqualification of Anthony Huffman, issues of admissibility or issues that are better suited for examination in an adversarial proceeding by the opposing party?*

Or more simply, to what extent was the Court correct to exclude the testimonies of W. Emmerich and A. Hoffman. Excluding these experts fundamentally hampers Plaintiff's ability to prove the extent to which it incurred damages, due to the conduct for which the Court found

Particle liable. Emmerich cannot functionally assert its claims in the next stages of litigation without these experts present.

b. There is Substantial Ground for Difference of Opinion

There is a substantial ground for difference of opinion regarding where a court should step in to exclude an expert, as opposed to allowing the two sides of an adversarial process to explore these questions through litigation. There is robust dispute on this matter, as lines are drawn differently across judges, courts, and circuits. Here, the Court excluded the testimony of Plaintiff's expert Wyatt Emmerich on the basis of qualification and reliability and excluded the testimony of Plaintiff's expert Anthony Huffman primarily because his analysis was predicated on the work of Wyatt Emmerich. Order Excl. Experts at 13 (excluding W. Emmerich on the basis of qualification and reliability); Order Excl. Experts at 14 ("[M]ost significantly, Huffman's opinions are admittedly wholly predicated on W. Emmerich[]"). Yet, those issues raised on reliability in the Order Excluding Experts are arguably those that go to the weight of the testimony, not its admissibility. Courts have found the factual basis of an expert opinion goes to credibility, rather than admissibility. *See e.g.*, *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2001) (stating that "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (citation omitted); *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991). Where the Court took issue with the factual basis of W. Emmerich's testimony, excluding both it and the testimony of A. Huffman as a result, there is substantial ground for a difference of opinion and argument that such a question would be better resolved in cross-examination.

c. Resolution of This Question Would Materially Advance the Termination of this Litigation

Proceeding to the liability stage of litigation without W. Emmerich and A. Huffman as experts for Plaintiff will meaningfully hinder Plaintiff's ability to assert its claims as to damages in the next phase of litigation. Without these experts, Plaintiff's claims are, in essence, defeated. *See Silverthorne Seismic,* 125 F.4th at 598 (restoration from termination would materially advance litigation). Moreover, not having experts to ascertain damages on behalf of Plaintiff will meaningfully detract from an efficient adjudication of the next phase of litigation, essential to the material advancement of this case.

**B. Alternatively, Plaintiff Requests Reconsideration of the Summary Judgment Order**

In the alternative to granting an interlocutory appeal, Plaintiff requests the Court reconsider its Summary Judgement Order on Two issues. First, on the question of the server test, reconsideration should be granted considering novel legal developments within the 5th Circuit. Second, Emmerich asks for reconsideration on the issue of Particle's violation of other forms of CMI.

1. <u>Reconsideration Should Be Granted Given New Legal Developments on the Server Test</u>

Plaintiff requests the Court reconsider its Summary Judgment Order on the issue of the server test. Reconsideration would be taken in light of *Urbanimage Media LTD v. IHeartMedia, Inc.*, SA-24-CV-00623-XR, 2025 WL 2182458 (W.D. Tex. July 29, 2025). That decision was issued on the same date as this Court's Summary Judgment Order, July 29, 2025. Thus, it was unavailable for Plaintiff to reference in briefing before the Court and should have been persuasive in this Court's decision.

In *Urbanimage Media*, the Western District of Texas vehemently disavowed the server test. That court found that:

> [t]he plain text of the Copyright Act, the legislative history behind its enactment, and subsequent Supreme Court Jurisprudence provide no

> support for the server test, a rule that allows physical location or possession of an image to determine whether a work has been "displayed" within the meaning of the Copyright Act.

*Urbanimage Media,* 2025 WL 2182458 at *4. Moreover, the *Urbanimage* court additionally concluded, "the server test runs *contra* to the text and legislative history of the Copyright Act." *Id.* at *7. In light of the holding in *Urbanimage*, Plaintiff asks that if an interlocutory appeal is not granted on the issue of the server test, this Court reconsider its Summary Judgment Order.

2. Reconsideration Should Be Granted in Consideration of Emmerich's Other CMI

In its First Amended Complaint Emmerich alleged:

> ***Particle altered Emmerich's filename and copyright management information ("CMI") on all 33,734 stolen articles by removing Emmerich's publisher information*** and substituting its own unique filename removing all reference to Emmerich's original filename. It did this each time a reader clicked through a link on the NewsBreak news feed (4,178,871 times in total). ***A complete list of the 33,734 articles stolen from Emmerich's websites and then republished with altered copyright management information is attached as Exhibit "D" and incorporated herein.***

Dkt. No. 15, ¶ 37 (emphasis added). Although Emmerich focused in its Complaint on Particle's alteration of Emmerich's URLs as one example of Particle's violation of 17 U.S.C. §§ 1202(b)(1) and (2), it later learned of the manner in which Particle "scraped" its articles and removed *other* forms of CMI including its banner/logo, menu button, share buttons, copy link button, and bylines. In its first motion Emmerich argued that its "banners, logos and links to other identifying information are CMI." Dkt. No. 44, at 2–5. In both of its motions for summary judgment Emmerich requested the Court to consider these other forms of CMI, but the Court refused. In its first Order, the Court stated that "arguments related to these belatedly asserted categories of CMI will not be considered by the court." Dkt. No.146, at 15 n.9 (citing *Cutrera v. Bd. of Sup'rs of Louisiana State Univ*., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment

is not properly before the court.") (emphasis added). In its second Order the Court stated that it "will not reconsider its ruling that Emmerich failed to plead the alternate categories of CMI offered in its first and now this motion for summary judgment." Dkt. No. 317, at 53 n.27.

Yet, Plaintiff now asks the Court to reconsider this statement given Emmerich only learned of these violations later in litigation. In identifying other categories of CMI which were removed and replaced by Particle in violations of §§ 1202(b)(1) and (2), Emmerich was not asserting a new claim. It was simply providing more proof in support of its existing claim of violation of the DMCA. In *Cutrera*, the plaintiff alleged in her complaint that the defendants terminated her in violation of the Americans with Disabilities Act of 1990 (ADA), but in response to a motion for summary judgment she also alleged, for the first time, that she was fired in retaliation for the exercise of her First Amendment rights. *Cutrera*, 429 F.3d at 113. In that scenario the court concluded that she was precluded from asserting this new claim for the first time. 429 F.3d at 113. Emmerich requests that this Court reconsider its Summary Judgment Order in the light of such proof as support for a pre-existing claim, rather than evidence of a new claim.

## IV. CONCLUSION

For all of these reasons, Emmerich respectfully requests this Court certify for interlocutory appeal its Summary Judgment Order of July 29, 2025 and its August 8, 2025 Order Excluding Experts, or, alternatively, requests the Court reconsider and vacate its ruling and grant summary judgment in favor of Emmerich. Emmerich further requests that the Court stay these proceedings pending resolution of this motion, including for reconsideration and interlocutory appeal.

Dated: August 21, 2025

Respectfully submitted,

By: *Wilson H. Carroll*
Wilson H. Carroll (MSB# 5894)
WILSON CARROLL, PLLC
2506 Cherry Street
Vicksburg, MS 39180
(601) 953-6579
wilson@wilsoncarroll.com

John W. ("Don") Barrett (MSB# 2063)
Katherine B. Riley (MSB# 9109)
David McMullan, Jr. (MSB# 8494)
BARRETT LAW GROUP, P.A.
404 Court Square N
Lexington, MS 39095
(662) 834-2488
dbarrettpa@gmail.com
krbiley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Charles J. LaDuca (to be admitted *pro hac vice*)
Charles Barrett (to be admitted *pro hac vice*)
Evelyn Y. Riley (to be admitted *pro hac vice*)
Christian Hudson (to be admitted *pro hac vice*)
CUNEO GILBERT & LADUCA, LLP
2445 M Street NW, Suite 740
Washington, DC 20037
(202) 789-3960
charlesl@cuneolaw.com
cbarrett@cuneolaw.com
evelyn@cuneolaw.com
christian@cuneolaw.com

*Counsel for Plaintiff*