**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INC.** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 3:23-cv-26-KHJ-LGI** |
| **PARTICLE MEDIA, INC.** | **DEFENDANT** |
| ***AND*** | |
| **EMMERICH NEWSPAPERS, INC.** | **PLAINTIFF** |
| **v.** | **CIVIL ACTION NO. 3:23-cv-391-KHJ-LGI** |
| **PARTICLE MEDIA, INC.** | **DEFENDANT** |

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Supplemental Scheduling Order [338]. Having considered the parties' submissions, the record, and the applicable law, the Court finds that the Motion [338] should be GRANTED in part and DENIED in part.

## BACKGROUND

On January 12, 2023, Plaintiff Emmerich Newspapers, Inc. ("Emmerich") filed this action against Particle Media, Inc. ("Particle").[1] Emmerich owns and publishes multiple local newspapers in Mississippi, Louisiana, and Arkansas. *See* Amended Complaint [47] at 5-6. Emmerich publishes its newspapers in both print form and on websites. *Id*. at 7. Its news stories are original works of authorship subject to copyright protection. *Id*. at 8. Particle owns a website and application called "NewsBreak," which provides users with access to local news stories tailored to the user's preferences. *Id*.

[1] Emmerich filed another suit against Particle in June of 2023, and the two actions were consolidated. *See* Order [35].

Emmerich claims, *inter alia*, that Particle displayed or "framed" Emmerich articles online in a way that infringed upon Emmerich's exclusive right to public display of the articles under the Copyright Act, 17 U.S.C. § 101, *et seq*. *Id*. at 16-17. Emmerich also claims that its URLs, or uniform resource locators, qualify as copyright management information ("CMI") under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq*., and that Particle violated the DMCA by removing Emmerich's URLs from the articles and displaying the articles under Particle's own URLs. *Id*. at 18.

On June 13, 2023, the Court entered a Case Management Order [28] setting case deadlines, including a February 1, 2024, expert designation deadline for Emmerich, a March 1, 2024, expert designation deadline for Particle, and a May 1, 2024, discovery deadline. Later, the discovery deadline was extended to July 1, 2024. *See* Order [98].

Both parties moved for summary judgment on various claims. Relevant here, Particle moved for summary judgment on the two claims mentioned above: that Particle's display of Emmerich's articles constituted infringement and that Particle's removal of Emmerich's CMI violated the DMCA. *See* Motions [284] [286].

Concerning the display-rights claim, the Court—applying the Ninth Circuit's "server test"—held that because Particle did not store Emmerich's content on its server and only linked to Emmerich's server, Particle "did not violate Emmerich's exclusive right to display its copyrighted content." *See* Order [317] at 34. Turning to the DMCA claim, the Court held that "URLs are not conveyed in connection with a copyrighted work and therefore, do not constitute CMI." *Id*. at 58.

Following the Court's ruling, Emmerich sought an interlocutory appeal. The Court granted in part Emmerich's request, allowing two issues to be presented to the Fifth Circuit: (1)

"whether the server test is the proper standard for evaluating infringement on the copyright holder's exclusive display right under 17 U.S.C. § 106(5)" and (2) "whether under § 1202 a URL can be considered Copyright Management Information, and if so, whether a URLs intentional removal constitutes a violation of § 1202(b)(1)." *See* Order [326]. The Court stayed this action pending the interlocutory appeal. *Id*.

On September 17, 2026, the Fifth Circuit's Opinion [334] and Mandate [335] were entered of record in this Court. Concerning the display-right claim, the Fifth Circuit rejected the Ninth Circuit's "server test" and fashioned the "transmit requirement" approach, which "is two-fold: first, locating where the transmission originates and, second, determining whether the transmission was permitted." *See* Opinion [334] at 29. Concerning the DMCA claim, the Fifth Circuit held that the statute "does not foreclose URLs from constituting CMI . . . ." *Id*. at 3.

Having answered the two issues on interlocutory appeal, the Fifth Circuit remanded the action for "proceedings consistent with" its Opinion. *Id*. at 49. Following remand, the Court lifted the stay of this action and directed the parties to file briefs concerning what claims and issues remain, whether any additional fact and/or expert discovery is necessary, and how much time would be needed to complete any such discovery. *See* Order [337].

On October 26, 2026, Emmerich filed its Motion for Supplemental Scheduling Order [338] requesting that the Court permit limited additional fact and expert discovery, supplementation of expert reports, and supplemental briefing on select issues. In turn, Particle filed a Response [340] arguing that supplemental discovery should not be allowed.

## STANDARD

The parties agree that the good cause standard under Fed. R. Civ. P. 16(b) applies here. The trial court is afforded broad discretion to preserve the integrity and purpose of the pretrial

order. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Case deadlines can be modified only by order of the Court upon a showing of good cause supported with affidavits, other evidentiary materials, or reference to portions of the record. *See* Case Management Order [14]; Fed. R. Civ. P. 16(b)(4). The good cause standard "require[s] the movant to show that the deadline cannot be met despite the diligence of the party needing the extension." *Puig v. Citibank, N.A.*, 514 Fed. App'x 483, 487-88 (5th Cir. 2013) (citation and quotation omitted). In determining whether the movant has met its burden under Rule 16(b)(4), the Court considers four factors: (1) the party's explanation for its failure to meet the deadline, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice. *S&W Enters., LLC v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *Geiserman*, 893 F.2d at 791.[2]

## ANALYSIS

Emmerich argues that there is good cause to allow certain additional fact and expert discovery and supplementation of expert reports because (1) the Fifth Circuit "clarified the governing legal framework and identified specific factual inquires material to the disposition of Emmerich's claims;" (2) "the evidence is important;" (3) "any prejudice to Particle can be addressed through reasonable limitations of discovery, reciprocal expert supplementation, and a defined schedule;" and (4) "the parties are not proceeding to an imminent trial date." *See* [338] at 2-3 n.2.

[2] In addition to the factors set forth above, the Court considered the excusable-neglect standards under Fed. R. Civ. P. 6(b)(2).

***Display-Right Claim***

Emmerich seeks supplemental discovery concerning its display-right claim in light of the Fifth Circuit's creation of the transmit requirement approach. Specifically, Emmerich seeks discovery concerning the architecture of NewBreak's framed presentation and the technological means available to Emerich to prevent transmissions and the issues of whether requests for Emmerich content originated directly from users' devices or passed through Particle-controlled systems; whether Particle cached, proxied, modified, or independently transmitted any of the content displayed in framed view; and whether Emmerich could identify and effectively reject NewsBreak-related transmission requests without denying access to ordinary readers. *See* [338] at 5-6.

For its part, Particle argues that the Fifth Circuit definitively resolved this claim in Particle's favor, rendering discovery unnecessary. Particle points to language in the Opinion which appears to support this position: "From careful analysis of the statutory texts, we conclude, first, that Particle's manner of linking does not run afoul of the Copyright Act, although we anchor on different language than that of the server test." *See* [334] at 3.

However, a reading of the entire Opinion undercuts Particle's argument. The Fifth Circuit emphasized that in "light of the interlocutory posture of this appeal," it only reviewed the question which was certified: "whether the server test comports with the plain language of the Copyright Act and is the proper standard for reviewing display right infringement claims." *Id.* at 11. To address this issue, the Fifth Circuit assumed certain facts, specifically, "(1) the transmission of the copy is from an authorized source, whereas the embedding webpage only makes a transmission request; and (2) the authorized source could have rejected the request." *Id.*

at 35. But, the appeals court specifically stated that it decided this issue "without the benefit of facts to further inform the analysis." *Id*. at 35. In its conclusion, the appeals court explained:

> Without the benefit of a completed, post-judgment appeal, with full factual development before us, our holdings a necessarily cabined by the interlocutory posture. We express no opinion on the ultimate resolution of Emmerich's claims, and we leave open future challenges to come in this space.

*Id*. at 49.

Emmerich argues that it should be given an opportunity to discover whether the Fifth Circuit's assumptions, which are obviously important when using the transmit requirement approach, are correct. Under the circumstances presented, the Court agrees. Considering the Fifth Circuit's rejection of the server test, creation of the transmit requirement approach, delineation of factors important to this approach, and factual assumptions, the first two good-cause factors of explanation and importance support additional discovery on this issue. Additionally, a trial is not currently set, allowing the Court to provide sufficient time for Particle to react to Emmerich's supplementation, ameliorating any prejudice faced by Particle.

***DCMA Claim***

As for the DCMA claim, there is no question the Fifth Circuit, having held that URLs *may* contain CMI, left for this Court the issues of whether Emmerich's URLs contained CMI and whether Particle's alteration or removal of any URL was done in such a way as to violate the DMCA. *Id*. at 48-49. The Fifth Circuit noted that Emmerich faces a "high bar" and provided guidance for determining whether Emmerich's URLs contained CMI. "[S]everal factors are essential . . . including: "whether the domain name corresponds with the copyright owner; whether the copyright is over the website as a whole or specific pages; whether the URL is sufficiently stable and not subject to change; and, above all, whether the URLs are clearly being conveyed for the purpose of communicating a copyrighted work." *Id*. at 47. The appeals court

also stated that "thoughtful examination of [the alteration or removal] issue would require factual development, so we cannot faithfully provide a definitive answer without such facts." *Id.* at 48.

Emmerich seeks to supplement the factual and expert record concerning the identifying functions of Emmerich's URLs, correspondence between URLs and protected works, URL stability and accessibility, links to other CMI, intentional removal or alteration, and statutory knowledge requirements. *See* [338] at 4-5. Given the Fifth Circuit's holding that URLs may constitute CMI and explanation of what facts should be considered in determining whether Particle violated the DCMA, the Court will afford the parties an opportunity to conduct limited discovery on these issues. Because of the Fifth Circuit's Opinion, the factors of explanation and importance weigh in favor of additional discovery, and the Court can provide sufficient time for Particle to react to Emmerich's supplementation, ameliorating any prejudice faced by Particle.

***Damages Expert***

Additionally, Emmerich requests leave to designate a new expert witness to testify concerning damages, specifically, the fair-market licensing value of Emmerich's copyrighted newspaper articles displayed by Particle. *See* [338] at 7. Emmerich's expert designation deadline expired on February 1, 2024, and Emmerich designated Wyatt Emmerich, president of Plaintiff Emmerich, and Anthony Huffman, Emmerich's certified public accountant, on February 8, 2024, after the parties agreed to a one-week extension. *See* [177-6]; [177-7]; [177-8]. Both witnesses[3] were expected to testify concerning Emmerich's actual damages using the average of three methodologies: lost revenue, value of articles stolen, and ad impressions value. *Id.*

---

[3] Emmerich designated Wyatt Emmerich as a non-retained expert and initially designated Huffman as a retained expert. On May 20, 2024, however, the Court allowed Emmerich to amend its designation, making Huffman a non-retained expert. *See* Order [103].

Particle moved to exclude these witnesses, and on August 8, 2025, the Court excluded both, finding that neither witness was qualified and that their proffered opinions were unreliable. *See* Order [319]. Now, Emmerich seeks to designate "a new expert witness" to testify concerning a new measure of damages, fair-market licensing value.

Emmerich's expert designation deadline expired nearly three years ago, and Emmerich provides no explanation for its failure to timely designate this witness. The Fifth Circuit did not provide legal or factual clarity on the issue of damages. The appeals court did not even address damages or expert witnesses. Thus, the first good-cause factor weighs heavily against allowing a new expert witness designation, and courts within this circuit have described this factor as the "most important factor" *See Ryan v. U.S. Dep't of Commerce*, 2021 WL 3134909, at *2 (S.D. Miss. July 23, 2021) ("Courts within the Fifth Circuit have described the explanation for needing more time as the most importance factor."); *Antonio v. Acadian Ambulance Servs. Inc.*, 2015 WL 12941882, at *1 (S.D. Miss. July 29, 2015) ("the first factor alone may be dispositive, outweighing the other three factors").

Turning to importance, the Court first notes that Emmerich's lengthy delay in attempting this designation undermines any claim of its importance. And, although Emmerich asserts that an "available measure of actual damages" would be lost without this designation, Emmerich does not argue that other measures of damages could not be presented to the jury. Even so, the Court finds that the factor of importance weighs slightly in favor of allowing the designation. The importance of evidence, however, "cannot singularly override the enforcement of local rules and scheduling orders." *King v. King*, 117 F.4th 301, 307 (5th Cir. 2024).

The record does not support allowing a damages expert "do-over." As Particle points out: "Allowing a new damages expert on a new measure of damages would require Particle to review

and respond to the new expert report, prepare for and depose the new expert, conduct written discovery, engage a new or existing expert to prepare a rebuttal opinion, and re-draft and re-file expert and dispositive motions, all of which constitute significant prejudice that no continuance would prevent." *See* [340] at 29. Thus, the Court will not amend the scheduling order to allow Emmerich to designate an expert on damages.

***Request for Clarification of Remaining Reproduction Claims***

Emmerich seeks clarification regarding the extent to which its reproduction claims under 17 U.S.C. § 106(1) remain for adjudication. Emmerich also requests additional discovery to the extent these claims have not been resolved. *See* [338] at 6.

As for clarification, the Court will set a motion deadline, and the parties' right to seek clarification may be addressed in any motion seeking such relief. As for discovery, Emmerich has failed to provide an explanation for its failure to complete discovery on this issue within the deadline. Unlike display rights under § 106(5) and CMI under the DCMA, this issue was not addressed by the Fifth Circuit. Thus, the first good-cause factor weighs against additional discovery on this issue. Additionally, Emmerich fails to explain the importance of additional discovery on this issue. Particle should not face the prejudice of expending time and resources for discovery on this issue.

Emmerich also requests an opportunity to seek clarification or reconsideration of the Court's prior interlocutory orders. As mentioned above, the Court will set a motion deadline. The parties' right to seek clarification or reconsideration may be addressed in any motion seeking such relief.

***Schedule and Discovery Provisions***

To allow for proceedings consistent with this Order, the Court orders as follows:

1. Emmerich's supplemental expert designation deadline is January 18, 2027;

2. Particle's supplemental expert designation deadline is February 17, 2027;

3. The supplemental discovery deadline is March 15, 2027;

4. A private mediation or a settlement conference with the Court is required, even if the parties have participated in a prior mediation; the parties are ordered and directed to schedule and complete same by the discovery deadline;

5. The deadline for motions (other than motions *in limine* or discovery motions) is extended to March 29, 2027;

6. The pre-trial conference is reset for July 22, 2027, before District Judge Kristi Johnson;

7. The jury trial is reset for a two-week term beginning August 16, 2027, before District Judge Kristi Johnson;

8. Any conflict with the trial date must be submitted in writing to the District Judge on or before December 2, 2026.

**SO ORDERED** this the 25th day of November 2026.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE